

1 | MILBERG LLP
JEFF S. WESTERMAN (SBN 94559)
2 | jwesterman@milberg.com
300 South Grand Avenue, Suite 3900
3 | Los Angeles, CA 90071
Telephone: (213) 617-1200
4 | Facsimile: (213) 617-1975
   -and-
5 | MILBERG LLP
JANINE L. POLLACK
6 | jpollack@milberg.com
ROLAND RIGGS
7 | rriggs@milberg.com
One Pennsylvania Plaza, 49th Floor
8 | New York, NY 10119
Telephone: (212) 594-5300
9 | Facsimile: (212) 868-1229

10 | SHEPHERD, FINKELMAN,
    MILLER & SHAH, LLP
11 | JAMES C. SHAH (SBN 260435)
35 E. State Street
12 | Media, PA 19063
Telephone: (610) 891-9880
13 | Facsimile: (610) 891-9883

EDGAR LAW FIRM, LLC
JOHN F. EDGAR
ANTHONY E. LACROIX
1032 Pennsylvania Avenue
Kansas City, MO 64105
Telephone: (816) 531-0033
Facsimile: (816) 531-3322

14 | Attorneys for Plaintiff

15 |        UNITED STATES DISTRICT COURT

16 |       SOUTHERN DISTRICT OF CALIFORNIA

17 |        SAN DIEGO **10 CV 1780   MMA BGS**

18 | VENUS MORGA, Individually and on Behalf of
All Others Similarly Situated,
19 |
               Plaintiff,
20 |
    v.
21 |
SKECHERS U.S.A., INC. and DOES 1 through
22 | 25,
23 |
           Defendants.
24 |

) Case No.
)
) **CLASS ACTION COMPLAINT**
)
)
) COMPLAINT FOR (1) VIOLATION OF
) BUSINESS & PROFESSIONS CODE
) SECTION 17200; (2) VIOLATION OF
) BUSINESS & PROFESSIONS CODE
) SECTION 17500; (3) VIOLATION OF
) THE CONSUMER LEGAL REMEDIES
) ACT, AND (4) UNJUST ENRICHMENT
)
) DEMAND FOR JURY

25 |

26 |

27 |

28 |

CLASS ACTION COMPLAINT

DOCS\524946v2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ......................................................................................1

JURISDICTION AND VENUE ....................................................................................2

PARTIES ........................................................................................................................2

SUBSTANTIVE ALLEGATIONS ...............................................................................3

      A.     The Deceptive Marketing Campaign ................................................3

      B.     The Scientific Community Has Rejected Defendant's Claims................7

CLASS ACTION ALLEGATIONS ..............................................................................9

FIRST CAUSE OF ACTION (Violation of Bus. & Prof. Code Section 17200 by Plaintiff, Individually and on Behalf of the General Public) ............................................12

SECOND CAUSE OF ACTION (Violation of Bus. & Prof. Code Section 17500) ....................13

THIRD CAUSE OF ACTION (Unjust Enrichment) ....................................................14

FOURTH CAUSE OF ACTION (Violation of Consumer Legal Remedies Act) .........................14

PRAYER FOR RELIEF .................................................................................................16

DEMAND FOR JURY TRIAL .....................................................................................17

| CLASS ACTION COMPLAINT | 1 | CASE NO.: |
|---|---|---|

1    Plaintiff Venus Morga, by and through the undersigned attorneys, makes the following

2    allegations and claims against Skechers U.S.A., Inc. ("Skechers" or "Defendant") on behalf of

3    herself, the proposed class, and the General Public, upon information and belief, except as to her

4    own actions, the investigation of her counsel, and the facts that are a matter of public record, as

5    follows:

6                                    **PRELIMINARY STATEMENT**

7        1.    Plaintiff files this class action on behalf of herself and all others similarly situated

8    to obtain restitution and injunctive relief for the Class, as defined, *infra*, at paragraph 30, from

9    Skechers.

10       2.    As alleged more fully herein, Skechers designed, manufactured, and sold shoes

11   under the model name "Shape-ups."

12       3.    During the Class Period, defined *infra* at paragraph 30, Skechers marketed Shape-

13   ups to consumers throughout the United States by claiming in print, television, and internet

14   advertisements that wearing Shape-ups would result in noticeable physiological benefits to

15   consumers, including weight loss, firmer muscles, reduced cellulite, improved circulation, and

16   improved posture.  Skechers claimed that as a result of these benefits, users could "[g]et in shape

17   without setting foot in a gym."  Skechers claimed these purported benefits had been shown in

18   "four clinical studies."

19       4.    Skechers used these claims regarding the "benefits" of Shape-ups to charge a

20   premium for the shoe that consumers readily paid, believing Shape-ups would confer upon them

21   significant health benefits.  Unbeknownst to consumers, Defendant's claims were false.  Shape-

22   ups provide no health benefit to users beyond what any other ordinary sneaker provides.  Worse,

23   Shape-ups have actually injured some consumers.

24       5.    Defendant's false and misleading advertising campaign has allowed it to reap

25   millions of dollars of profit at the expense of the consumers it has misled.  This action seeks to

26   restore that money to consumers, and to enjoin Defendant's deceptive and unlawful advertising.

27

28

| CLASS ACTION COMPLAINT | 1 | CASE NO.: |

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. § 1332(d) because the aggregate claims of Plaintiffs and members of the Class exceed the sum or value of $5,000,000, and there is diversity of citizenship between at least one member of the proposed Class and Defendant.

7.     Venue is proper in this District under 28 U.S.C. § 1391(a)(1) and (2). Defendant is conducts substantial business throughout California including in this District, and there is already a related case pending in this District.

## PARTIES

8.     Plaintiff Venus Morga, ("Plaintiff") is a resident of the state of California, and was exposed to Defendant's misleading advertisements in the state of California. In response to Defendant's misleading ad campaign, Plaintiff purchased a pair of Shape-ups while on a trip to Nevada in December of 2009. Plaintiff wore the Shape-ups and did not experience any of the benefits described in Defendant's misleading ad campaign.

9.     Defendant Skechers is a corporation organized and existing under the laws of the State of Delaware, with its headquarters and principal place of business at 228 Manhattan Beach Boulevard, Manhattan Beach, California 90266. Skechers, thus, is a citizen of California and Delaware. Skechers is registered to and does conduct business in this State. Skechers has marketed, distributed, and sold Shape-ups to thousands of consumers in this State.

10.     The true names and capacities, whether individual, corporate, associate or otherwise, of each of the defendants designated as a DOE are unknown to Plaintiff at this time and therefore Plaintiff sues Defendants by such fictitious names. Plaintiff will ask leave of the Court to amend this Complaint to show the true names and capacities of the DOE Defendants when that information has been ascertained. Plaintiff is informed and believes and thereon alleges that each of the Defendants designated herein as a DOE is legally responsible in some manner and liable for the events and happenings herein alleged and, in such manner, proximately caused harm to Plaintiff as herein further alleged.

| CLASS ACTION COMPLAINT | 2 | CASE NO.: |

# SUBSTANTIVE ALLEGATIONS

## A.    The Deceptive Marketing Campaign

11.    Skechers designs, manufactures, markets, distributes and sells shoes.  One line of shoes marketed and sold by Skechers is the Shape-up line.

12.    The Shape-up line of shoes contains what Skechers describes as a "unique kinetic wedge."   This wedge is essentially a piece of foam, which is thickest at the heel and progressively thinner towards the toes, contained between the outer and inner soles of the shoe.  This, in conjunction with an outer sole that is rounded rather than flat, is intended to alter the way the wearer stands and/or walks.  According to the Skechers website,[1] the shoes "simulate walking on soft sand.  With the comfort of Shape-ups, you will feel your heel sink to the ground as you step, roll forward as your weight shifts to its center, and push off with your toes.  This movement will result in stronger leg, buttock, back and abdominal muscles as you stabilize your steps."  This design is simply a variant on an older design known commonly as a "rocker-bottom" shoe.

13.    Skechers has heavily promoted its Shape-up line of shoes through at least three media:  1)  Television advertising; 2) Other traditional forms of advertising, such as billboards, signs on bus stops and buses, signs in stores, and print ads; and 3) Internet advertising, including, *inter alia,* two different websites (http://www.skechers.com and http://www.myshapeups.com), postings on the video sharing website youtube.com, and advertisements on internet search engines including Google.

14.    Regardless of the medium used, Skechers advertisements for Shape-ups uniformly convey to consumers that they will reap significant health benefits by wearing Shape-ups.  These purported benefits include but are not limited to:

        (a)    improved circulation;

        (b)    improved posture;

        (c)    reduced cellulite and "toned" thighs;

        (d)    tighter abdominal muscles;

---

[1] *See* Skechers, http://www.skechers.com/info/shape_ups, (last accessed Aug. 3, 2010).

| CLASS ACTION COMPLAINT | 3 | CASE NO.: |
|---|---|---|

(e)     stronger back muscles;

(f)     improved cardiovascular health;

(g)     reduced stress on knee joints;

(h)     weight loss; and

(i)     firmer leg, calf and buttock muscles.

As set forth herein, however, Skechers knew or should have known Shape-ups do not provide any of these purported benefits in any greater degree than an ordinary shoe.

15.     Defendant's ad campaign further consistently states that Shape-ups will allow consumers to "[g]et in shape without setting foot in a gym." That phrase is found on Defendant's website and print ads, and is used at the start of television ads for Shape-ups. Indeed, the shoes are sold with an "instructional dvd" that begins by stating "Congratulations! With Shape-ups you can finally get in shape, without going to the gym."[2] The DVD goes on to state that Shape-ups are "the newest in exercise technology" and warn users that "like any exercise regimen," walking in Shape-ups should begin with "short periods of practice."

16.     Defendant's website similarly describes Shape-ups as follows:

> *Designed to improve your life by changing the way you walk,* Shape-ups feature a unique soft kinetic wedge insert and dynamic rolling bottom to simulate walking on soft sand. With the comfort of Shape-ups, you will feel your heel sink to the ground as you step, roll forward as your weight shifts to its center, and push off with your toes. *This movement will result in stronger leg, buttock, back and abdominal muscles as you stabilize your steps.*
>
> Due to this unconventional manner of walking, we suggest you moderate your walking routine in Shape-ups for the first week or two (25 to 45 minutes per day), depending on your level of fitness. As you continue to wear your Shape-ups, your body will adjust to this new method of walking. *You will find it easy and comfortable while still enjoying its strengthening cardiovascular benefits.*

(emphasis added; emphasis in original removed).

---

[2] Both the "instructional dvd" and a sampling of Defendant's television ads can be found at http://www.myshapeups.com, a website owned and operated by Skechers or its affiliates (last accessed Aug. 3, 2010).

| CLASS ACTION COMPLAINT | 4 | CASE NO.: |

17.    Likewise, Defendant's print ads feature pictures of people wearing Shape-ups, with a representation regarding the "benefits" listed in paragraph 14, above, located next to the applicable part of the body.[3]

18.    These statements and others like them demonstrate Defendant's intention to persuade consumers that its Shape-up line of shoes provides health benefits by altering users' gait, which in turn will purportedly lead to the benefits described in paragraph 14, above, without any further changes in diet or exercise routine by the user.  In fact, Defendant explicitly instructs consumers that a gym is not necessary, because its shoes allow users to "[g]et in shape without going to the gym."

19.    Skechers has bolstered consumers' confidence in these assertions by claiming via its website that "[f]our clinical studies in the US and Japan show that Shape-ups increase muscle activity and energy consumption over standard fitness shoes!"[4]

20.    The website further states:

Doctors and researchers have confirmed that walking in Shape-ups can have major benefits on our health, including:

More toned and strengthened leg, back, buttock and abdominal muscles;

Reduced body fat;

Improved circulation, aerobic conditioning, and exercise tolerance; and

Improved posture, relieving muscle tension and back/joint problems.

21.    The website further purports to give the "results" of each of the four studies, each of which claims to demonstrate the aforementioned health benefits of Shape-ups.

22.    Specifically, Defendant, through its website, makes the following claims:

(a)    in a June 2009 study, volunteers were instructed to wear Shape-ups and otherwise not alter their exercise or diet regimes.  According to the website, this resulted in "an average weight loss [] of 3.25 pounds," reduction of body fat by 1.125%, "an average

---

[3] Examples of Defendant's print ads can be found at http://www.skechers.com/info/as_seen_in_print (last accessed Aug. 3, 2010).

[4] Skechers, http://www.skechers.com/info/shape_ups_clinical_case_study (last accessed August 3, 2010).

improvement of glutein strength by 41%," and "an average improvement of low back endurance by 37%."

       (b)    in a May 2009 study, subjects using Shape-ups were compared to subjects using "normal sports shoes" while walking at various speeds. The comparison "showed higher muscle activities at all speeds for subjects wearing Shape-ups" and that "[w]earing Shape-ups increases muscle activity, which leads to higher energy consumption compared to normal shoes, so exercising for a long time (walking) will burn subcutaneous fat and visceral fat, and effects such as firmer buttocks may be expected."

       (c)    in an August 2009 study comparing the same 10 women wearing both normal shoes and Shape-ups, "study results show that muscles in the legs are used more with Shape-ups than with standard sneakers" and "extra use of the leg muscles tones and strengthens the muscles in the legs, back and abdomen" and "may also improve overall aerobic conditioning and lead to improved circulation, reduced body fat, increased exercise tolerance, and improved overall health."

       (d)    in a November 2009 study, 80 adults were compared, some wearing Shape-ups and some wearing normal athletic shoes. The study claims that on average, users of Shape-ups: lost 2.78 lbs, compared to 0.30 lbs in the control group; reduced body fat by 1.31%, compared to 0.57% in the control group; experienced a 114% improvement in glutei, hamstring, and gastrocnemius muscles, compared to a 68% improvement in the control group; and experienced a 23% improvement in low back endurance strength, compared to a 0.04% improvement in the control group. According to the website, "[t]hese findings allow us to conclude that a Shape-ups walking program can improve fitness markers such as weight loss, improved body composition and certain muscle strength gains."

    23.    Plaintiff cannot, without discovery, know the details of each of these studies. However, Plaintiff is informed and believes and thereon alleges that each of these studies was medically, statistically and scientifically unsound. Indeed, the Wall Street Journal has noted that the May 2009 study "didn't have a control group and wasn't rigorously designed." *See* Laura

Johannes, *Shoes that Rock Your Muscles,* Wall Street Journal, Sept. 15, 2009.[5] Further, Plaintiff is informed and believes and thereon alleges that none of these studies has been subjected to traditional scientific scrutiny, in that none of them was conducted by impartial, double-blinded third parties, and none was subjected to peer review or other methods traditionally used by the scientific community to ensure accurate results. Rather, these studies were commissioned by Skechers and, from their inception have been nothing more than marketing tools. Further, studies conducted on previous (but similarly designed) models of rocker-bottom shoes have found that those shoes do *not* have the benefits Defendant claims here.

**B.    The Scientific Community Has Rejected Defendant's Claims**

24.    Contrary to Defendant's claims, virtually every independent scientist that has spoken out on the issue has verified that *none* of the benefits promised by Skechers is actually realized by the consumer. For example, a USA Today article entitled *A Revolutionary Sneaker, or Overhyped Gimmick?* published June 30, 2010 and available on USA Today's website[6] stated in part:

> a growing number of doctors are warning that toning shoes don't deliver on their marketing promises and could cause injuries by, among other things, changing a person's gait, or way of walking.
>
> Claims that toning shoes can significantly contribute to a person's fitness are "utter nonsense," says Barbara de Lateur, distinguished service professor of physical medicine and rehabilitation at Johns Hopkins University's School of Medicine in Baltimore.
>
> *          *          *
>
> David Davidson, national president of the American Academy of Podiatric Sports Medicine, says the shoes basically make adults learn to walk, or run, all over again by changing their gait. That's a "scary" prospect for someone with a "borderline problem" they might not know about.

---

[5] Available at http://online.wsj.com/article/NA_WSJ_PUB:SB10001424052970203278404574413002408468102.html.

[6] *See* http://www.usatoday.com/news/health/2010-06-30-toning-shoes_N.htm (last accessed August 3, 2010).

| CLASS ACTION COMPLAINT | 7 | CASE NO.: |

Davidson says he's suspicious of any shoes that come with an instructional booklet and DVD.

"Nothing about these shoes has any redeeming value to me," he says. "Sorry, I don't see it."

25.    A study recently conducted by the University of Wisconsin — La Crosse and published by the American Counsel On Exercise further demonstrated that there was no statistically significant benefit to wearing Shape-ups.[7]   That study measured the heart rate, kilocalories burned, oxygen consumption, and muscle activity in users wearing Shape-ups, normal shoes, and two other types of rocker-bottom shoes.  The study found that there was no significant difference in *any* category, at *any* speed, between Shape-ups and normal tennis shoes.

26.    As the article by the American Counsel for Exercise concluded:

"Don't buy these shoes because of the claims that you're going to tone your butt more or burn more calories. That's absolutely wrong," says Porcari. Then how do researchers account for the anecdotal evidence (found on blogs, etc.) from those who wear the shoes and claim their muscles get sore, which must mean the shoes are working?

"Do you feel different when you're wearing these shoes? Of course you do because you're walking on probably an inch worth of cushioning," explains Porcari. "They feel different, and that's why when people first wear them they're probably going to be sore because you're using different muscles. But if you wear any sort of abnormal shoes that you're not used to wearing, your muscles are going to get sore. *Is that going to translate into toning your butt, hamstrings and calves? Nope.* Your body is just going to get used to it."

(emphasis added).

27.    Not only do Shape-ups *not* provide the benefits as claimed, they have significant drawbacks which Skechers has omitted from its advertising.  Specifically, because the Shape-ups are designed to constantly challenge the user's balance, they are unsuitable for users with flat feet, or those who have pre-existing difficulties maintaining their balance.   Additionally, consumers who are more prone to injury in areas that are responsible for maintaining balance (such as the hamstring or ankle) will exacerbate that risk by using Shape-ups.

---

[7] *See* John Forcari, Ph.D., John Greany, Ph.D., Sephanie Tepper, M.S, Brian Edmonson, B.S., and Carl Foster, Ph. D., with Mark Anders, *WIll Toning Shoes Really Give You a Better Body?* http://www.acefitness.org/getfit/studies/toningshoes072010.pdf

| CLASS ACTION COMPLAINT | 8 | CASE NO.: |

28.     As the USA Today article explained:

> De Lateur and other doctors warn that toning shoes create their advertised benefit by destabilizing how a person walks and say that wearing the shoes can result in strained Achilles tendons. De Lateur also says the shoes can be a particular problem for older consumers or those who have difficulty keeping their balance.  Alison Drury of Louisville can attest to that.  She says she broke her right ankle after awkwardly rolling over the outside of her foot during her first mile-long walk in Skechers Shape-ups shoes.
>
> *        *        *
>
> Bryan Markinson, chief of podiatric medicine at Mount Sinai School of Medicine in New York, says some of his patients who are "not in the greatest of shape" have inflamed their Achilles tendons while wearing toning shoes. People thinking of buying them, he says, should begin an "active stretching program" or else risk injury.
>
> Jonathan Deland, chief of foot and ankle service at the Hospital for Special Surgery in New York, warns the shoes can be "dangerous" for people with balance problems.

29.     Skechers has reaped millions of dollars in profits by leading consumers to believe that "clinical studies" show that Shape-ups allow consumers to "get in shape without setting foot in the gym."   Consumers would not have paid the prices they did for, or would not have purchased at all, the Shape-up line of shoes, had they known the truth:  that Shape-ups have *none* of the benefits as described by Skechers and in fact *increase* the likelihood that some users will suffer serious injuries, such as broken ankles or pulled hamstrings.

## CLASS ACTION ALLEGATIONS

30.     Plaintiff brings this class action pursuant to Federal Rule of Civil Procedure 23 on behalf of herself and a Class of all others similarly situated consisting of all persons in the United States who purchased at retail a pair of Shape-ups (the "Class") from August 25, 2006, until the final disposition of this case (the "Class Period").   Excluded from the Class are Defendant; officers, directors, and employees of Defendant; any entity in which Defendant has a controlling interest; the affiliates, legal representatives, attorneys, heirs, and assigns of Defendant; any federal, state, or local government entity; and any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staffs.  The members of the

| CLASS ACTION COMPLAINT | 9 | CASE NO.: |
|---|---|---|

Class are so numerous that joinder of all members would be impracticable. Plaintiff reasonably estimates that there are thousands of purchasers of the product at issue.

31.     This Court properly can and should apply California law to all of the claims and issues asserted herein. Certification of the Class under the laws of the State of California is appropriate because:

(a)     (Skechers is a corporation conducting substantial business in and from California;

(b)     Skechers's principal place of business and corporate headquarters are located in California;

(c)     Decisions regarding Skechers's representations and omissions regarding Shape-ups were made in and from California;

(d)     Skechers's marketing, promotional activities and literature are coordinated at, emanate from and/or are developed at its California headquarters;

(e)     The statutory consumer protection claims asserted in this Complaint may be appropriately brought on behalf of California and out-of-state Class members; and

(f)     A significant number of Class members reside in California.

32.     There are questions of law and fact common to the members of the Class that predominate over any questions affecting only individual members, including:

(a)     Whether Skechers violated California Business & Professions Code § 17200, *et seq.* and § 17500, *et seq.*;

(b)     Whether Defendant's representations and conduct were likely to deceive consumers into believing Shape-ups provided health benefits they did not;

(c)     Whether Skechers initiated a deceptive marketing campaign;

(d)     Whether, by its misconduct as set forth herein, Skechers has engaged in unfair or unlawful business practices;

(e)     Whether, by its misconduct as set forth herein, Skechers has engaged in unfair, deceptive, untrue, or misleading advertising;

| CLASS ACTION COMPLAINT | 10 | CASE NO.: |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

        (f)     Whether Skechers has been unjustly enriched;

        (g)    Whether the members of the Class have been injured by Defendant's conduct; and

        (h)    Whether Plaintiff and the Class are entitled to relief, and the amount and nature of such relief.

33.    The claims of Plaintiff are typical of the claims of the members of the Class. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

34.    Plaintiff will fairly and adequately protect the interests of the Class, and has retained attorneys experienced in class and complex litigation.

35.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy for the following reasons:

        (a)    It is economically impractical for members of the Class to prosecute individual actions;

        (b)    The Class is readily definable; and

        (c)    Prosecution as a class action will eliminate the possibility of repetitious litigation.

36.    A class action will cause an orderly and expeditious administration of the claims of the Class. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

37.    Plaintiff does not anticipate any undue difficulty in the management of this litigation.

38.    Plaintiff and the Class expressly exclude any causes of action relating to personal injury or other bodily harm arising from Defendant's conduct.

| CLASS ACTION COMPLAINT | 11 | CASE NO.: |
| --- | --- | --- |

**FIRST CAUSE OF ACTION**
**(Violation of Bus. & Prof. Code Section 17200 by Plaintiff,**
**Individually and on Behalf of the General Public)**

39.     Plaintiff incorporates the above allegations by reference as if set forth herein at length.

40.     Plaintiff brings this cause of action on behalf of herself and the Class.

41.     Defendant has engaged in unfair, unlawful and fraudulent business acts and practices as set forth above.

42.     By engaging in the above-described acts and practices, Defendant has committed one or more acts of unfair competition within the meaning of Business and Professions Code Section 17200, *et seq.*

43.     Skechers engaged in "unfair" business acts or practices by selling the Shape-ups at a premium price.  Consumers do not receive an increased benefit from purchasing the Shape-ups over what they would receive from an ordinary athletic shoe, because Shape-ups do not promote weight loss or other physiological benefits as indicated, and increase the risk of injury. Defendant's sale of the Shape-ups at a premium price harms consumers, and there is no corresponding benefit to consumers that outweighs this harm.  Moreover, the injuries suffered by Plaintiff and Class members could not have been reasonably avoided by their own conduct.

44.     Skechers engaged in "fraudulent" business acts or practices by promoting the Shape-up shoes as suitable for causing weight loss, increased muscle tone, improved circulation and posture, and other physiological benefits, which Skechers knew they could not provide, and by bolstering these false claims by asserting that "clinical studies" had verified its claims.

45.     Defendant's acts and practices have deceived, and/or are likely to deceive, members of the consuming public.

46.     Skechers engaged in "unlawful" acts and practices because its actions as alleged herein violate, at a minimum, Civil Code Sections 1770(a)(5), 1770(a)(7), 1770(a)(9), and 1770(a)(16) and Business and Professions Code Section 17500, *et seq.*

47.   Plaintiff and Class members relied on Skechers's misrepresentations.

48.   Skechers's violations of Section 17200 continue to this day.   As a direct and proximate result of Skechers's violations, Plaintiff and members of the Class were injured in fact and lost money or property.   Plaintiff has suffered actual damage in that, *inter alia,* she paid more for her Shape-ups than she would have had Skechers not engaged in the false and misleading advertising campaign described herein.

49.   Plaintiff, on behalf of herself and on behalf of each member of the Class, seeks restitution, injunctive relief and other relief allowed under Section 17200, *et seq.*

## SECOND CAUSE OF ACTION
### (Violation of Bus. & Prof. Code Section 17500)

50.   Plaintiff incorporates the above allegations by reference as if set forth herein at length.

51.   Plaintiff brings this cause of action on behalf of herself and the Class.

52.   Defendant has advertised and marketed to the public and offered for sale its Shape-up line of shoes on a nationwide basis, including in California.

53.   Defendant has engaged in the advertising and marketing alleged herein with an intent to directly or indirectly induce the purchase of Shape-ups.

54.   Defendant's advertisements and marketing representations are false, misleading, and likely to deceive the public and/or have deceived the public by falsely representing the characteristics of Shape-ups, as set forth more fully above.

55.   Additionally, Defendant has made false and misleading statements purportedly based on clinical evidence.

56.   In making and disseminating the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, and acted in violation of the Business and Professions Code Section 17500, *et seq.*

57.   Plaintiff and Class members relied on Defendant's misrepresentations.

| CLASS ACTION COMPLAINT | 13 | CASE NO.: |

58.     The misrepresentations and non-disclosures by Skechers of the facts detailed above constitute false and misleading advertising and therefore constitute a violation of California Business & Professions Code § 17500, *et. seq.*

59.     Plaintiff and the Class members based their decisions to purchase the Shape-ups in substantial part on Defendant's misrepresentations and omitted material facts.  The revenues to Defendant attributable to products sold in those false and misleading advertisements amount to millions of dollars for these products.  Plaintiff and the Class were injured in fact and lost money or property as a result of Defendant's wrongful conduct.

60.     Plaintiff, on behalf of herself and the Class, seeks restitution, injunctive relief and other relief allowable under Section 17500, *et seq.*

### THIRD CAUSE OF ACTION
### (Unjust Enrichment)

61.     Plaintiff incorporates the above allegations by reference as if set forth herein at length.

62.     Skechers sold Shape-ups at premium prices because of their advertised ability to promote the physiological benefits as indicated described in paragraph 14 above.  However, Shape-ups do not have such capabilities.

63.     Skechers has been unjustly enriched to the extent it has charged a "premium" price for a shoe that performs no better than other shoes sold for much less at retail.

64.     Plaintiff, on behalf of herself and the Class, seeks restitution.

### FOURTH CAUSE OF ACTION
### (Violation of Consumer Legal Remedies Act)

65.     Plaintiff incorporates the above allegations by reference as if set forth herein at length.

66.     The CLRA applies to Defendant's actions and conduct described herein because it extends to transactions that have resulted in the sale or lease of goods or services to consumers.

67.     Plaintiff and each member of the Class are "consumers" within the meaning of Civil Code Section 1761(d).

| CLASS ACTION COMPLAINT | 14 | CASE NO.: |
|---|---|---|

68.     The Shape-up shoes that Plaintiff and each member of the Class own are "goods" within the meaning of Civil Code Section 1761(a).

69.     Defendant has violated the CLRA in at least the following respects:

(a)     in violation of Section 1770(a)(5), Skechers represented that Shape-up shoes have characteristics and benefits that they do not have;

(b)     in violation of Section 1770(a)(7), Skechers represented that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, when they are of another;

(c)     in violation of Section 1770(a)(9), Skechers has advertised Shape-ups with the intent not to sell them as advertised; and

(d)     in violation of Section 1770(a)(16), Skechers has represented that Shape-ups were supplied in accordance with previous representations, when they were not.

70.     Skechers affirmatively represented to consumers that the Shape-up shoes have medical or physiological benefits they do not have as indicated, including the ability to cause users to burn excess calories and tone muscle.

71.     Skechers also omitted to state that the Shape-up shoes cause an increased risk of injury to consumers.

72.     This sort information is relied upon by consumers in making purchase decisions, and is fundamental to the decision to purchase a pair of athletic shoes, particularly where, as here, the shoes under consideration are priced at a premium compared to other walking shoes.

73.     Plaintiff and the other class members relied upon Defendant's misrepresentations to their detriment.

74.     Defendant's misrepresentations constitute unfair, deceptive, and misleading business practices in violation of Civil Code Section 1770(a).

75.     Defendant's deceptive acts and omissions occurred in the course of selling a consumer product and have occurred continuously through the filing of this Complaint.

| CLASS ACTION COMPLAINT | 15 | CASE NO.: |

76. On August 25, 2010 Plaintiff notified Skechers in writing by certified mail of the violations alleged herein and demanded that Skechers remedy those violations. A copy of the letter Plaintiff sent to Skechers is attached as Exhibit A.

77. If Skechers does not remedy the violations alleged herein by September 25, 2010, Plaintiff will amend this complaint to add claims for actual, punitive, and statutory damages as appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself, all others similarly situated, and the General Public, prays for judgment against Defendant as follows:

A. An order certifying this case as a class action and appointing Plaintiff and her counsel to represent the Class;

B. Individual restitution to Plaintiff and each member of the Class;

C. An order requiring Skechers to immediately cease its wrongful conduct as set forth above;

D. For reasonable attorneys' fees and the costs of this action;

E. For statutory pre-judgment interest; and

F. For such other relief at this Court may deem just and proper.

| CLASS ACTION COMPLAINT | 16 | CASE NO.: |

1

## DEMAND FOR JURY TRIAL

2    Plaintiff hereby demands a trial of her claims by jury to the extent authorized by law.

3    DATED:  August 25, 2010                      MILBERG LLP
                                                   JEFF S. WESTERMAN
4

5

6                                                  JEFF S. WESTERMAN

7                                                  One California Plaza
                                                   300 South Grand Avenue, Suite 3900
8                                                  Los Angeles, CA 90071
                                                   Telephone: (213) 617-1200
9                                                  Facsimile:  (213) 617-1975
                                                   E-mail: jwesterman@milberg.com
10

11                                                 MILBERG LLP
                                                   JANINE L. POLLACK
                                                   jpollack@milberg.com
12                                                 ROLAND RIGGS
                                                   rriggs@milberg.com
13                                                 One Pennsylvania Plaza, 49th Floor
                                                   New York, NY  10119
14                                                 Telephone:    (212) 594-5300
                                                   Facsimile:    (212) 868-1229
15
                                                   SHEPHERD, FINKELMAN,
16                                                    MILLER & SHAH, LLP
                                                   JAMES C. SHAH (SBN 260435)
17                                                 35 E. State Street
                                                   Media, PA 19063
18                                                 Telephone:    (610) 891-9880
                                                   Facsimile:    (610) 891-9883
19
                                                   EDGAR LAW FIRM, LLC
20                                                 JOHN F. EDGAR
                                                   ANTHONY E. LACROIX
21                                                 1032 Pennsylvania Avenue
                                                   Kansas City, MO  64105
22                                                 Telephone:    (816) 531-0033
                                                   Facsimile:    (816) 531-3322
23
                                                   Attorneys for Plaintiff
24

25

26

27

28

| CLASS ACTION COMPLAINT | 17 | CASE NO.: |

**EXHIBIT A**



Janine L. Pollack
Direct Dial: 212-946-9376
jpollack@milberg.com

August 25, 2010

**VIA CERTIFIED MAIL (RETURN RECEIPT)**
**(RECEIPT NO. 7002 0860 0004 3957 7792)**

Phillip G. Paccione
General Counsel
Skechers USA, Inc.
228 Manhattan Beach Blvd.
Manhattan Beach, CA 90266

  Re: **Morga v. Skechers USA, Inc. et al.**

Dear Mr. Paccione:

  Please be advised that this firm, Milberg LLP, represents Plaintiff Venus Morga on behalf of herself and all others similarly situated in an action against Skechers USA, Inc. ("Skechers"). This notice is being sent to you pursuant to Civil Code §1782(a)(2).

  Our client is maintaining a class action on behalf of all consumers nationwide who purchased Skechers Shape-Up shoes. Plaintiff is alleging through this action that the shoes she purchased were marketed as having specific physiological benefits, including without limitation that they would: promote weight loss, improve posture, improve circulation, and tone muscles.

  It is further alleged that these representations were false, and that Skechers knew or should have known at the time it made these representations that they were false. The full allegations are contained in Plaintiff's Class Action Complaint, a copy of which is attached.

  Despite the above facts, Skechers continues to represent to consumers that its shoes are "clinically proven" to possess benefits they do not, in fact, possess.

  These practices constitute violations of California Civil Code §1770 in at least the following respects:

EXHIBIT A - PAGE 1

Phillip G. Paccione
General Counsel
Skechers USA, Inc.
August 25, 2010
Page 2

(a)     in violation of Section 1770(a)(5), Skechers represented that Shape-up shoes have characteristics and benefits that they do not have;

(b)     in violation of Section 1770(a)(7), Skechers represented that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, when they are of another;

(c)     in violation of Section 1770(a)(9), Skechers has advertised Shape-ups with the intent not to sell them as advertised; and

(d)     in violation of Section 1770(a)(16), Skechers has represented that Shape-ups were supplied in accordance with previous representations, when they were not.

In light of the foregoing, and pursuant to Civil Code §1782(a)(2), it is hereby demanded on behalf of our client, and all others similarly situated nationwide, that Skechers immediately correct, repair, replace, and otherwise rectify the violations of §1770, through the following actions: that Skechers cease and desist in making representations regarding the Shape-Up line of shoes that are not in fact true, that it engage in an advertising campaign which will alert the public to its misconceptions about the shoes at issue, and that it offer to refund the purchase price paid for the shoes, plus interest, costs and fees, as is detailed at length in the operative complaint.

Should the above actions not be taken by your client after 30 days from the date of this letter, plaintiff will amend her Complaint to include claims for actual damages, punitive damages and all other damages permitted under the Consumer Legal Remedies Act unless appropriate correction, repair, replacement, or other remedy is given, or agreed to be given within a reasonable time pursuant to Civil Code §1782(b).  Furthermore, please be advised that the portion of the class who are "senior citizens," or "disabled persons," and who suffered the aforementioned illegal acts and practices by Skechers will be entitled to treble damages and/or $5,000 per person pursuant to Civil Code §§1780(b) and 3345.  Therefore, in order to avoid further litigation, it is in the best interest of all involved that Skechers rectify the situation immediately.

Note that in order for Skechers to avoid an action for damages, it must do all of the following pursuant to Civil Code §1782(c):

1.     Identify, or make a reasonable effort to identify, all present and former consumer purchasers of the shoes in question;

2.     Notify all such consumers that, upon their request, Skechers will refund the purchase price of the shoes plus reimbursement for interest, costs, and fees; and

MILBERG LLP                         EXHIBIT A - PAGE 2

Phillip G. Paccione
General Counsel
Skechers USA, Inc.
August 25, 2010
Page 3

     3.     Cease to engage in the methods, acts or practices outlined above.

Thank you for your attention to this matter. We look forward to hearing from you.

                 Very truly yours,

                 *Janine L. Pollack / RLR*

                 Janine L. Pollack

Enclosure

EXHIBIT A - PAGE 3

MILBERG LLP

%JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

VENUS MORGA, Individually and on Behalf of All Others Similarly Situated,

**(b)** County of Residence of First Listed Plaintiff   San Joaquin
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Milberg LLP, 300 S. Grand Ave., Ste 3900, Los Angeles, CA 90071
Telephone: (213) 617-1200

## DEFENDANTS

SKECHERS U.S.A., INC. and DOES 1 through 25,

10 AUG 25  PM 4: 09

CLERK U.S. DISTRICT COURT

County of Residence of First Listed Defendant   Los Angeles
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

DEPUTY

Attorneys (If Known)   '10 CV 1780   MMA BGS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☒ 3  Federal Question (U.S. Government Not a Party)
☐ 2  U.S. Government Defendant
☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff (For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☒ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):  28.1332 CAFA
Violation of Bus. & Prof. Code §§ 17200 & 17500; Violation of the Consumer Legal Remedies Act; & Unjust Enrichment
Brief description of cause:
False and misleading advertising of Skechers Shape-ups.

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE   Jeffrey T. Miller   DOCKET NUMBER   3:10-cv-01300-JM -WVG

DATE
08/25/2010

SIGNATURE OF ATTORNEY OF RECORD
Jeff S. Westerman

## FOR OFFICE USE ONLY

RECEIPT # 7340   AMOUNT $350   8/25/10 BH   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

```
Court Name: USDC California Southern
Division: 3
Receipt Number: CAS017340
Cashier ID: bhartman
Transaction Date: 08/25/2010
Payer Name: SAN DIEGO LEGAL SUPPORT SVCS
----------------------------------
CIVIL FILING FEE
 For: MORGA V SKECHERS USA
 Case/Party: D-CAS-3-10-CV-001780-001
 Amount:        $350.00
----------------------------------
CHECK
 Check/Money Order Num: 92720
 Amt Tendered:  $350.00
----------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00


There will be a fee of $45.00
charged for any returned check.
```